IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAJOR L. MITCHELL,<br><br>                Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | CIVIL ACTION<br>NO. 13-5675 |

<u>OPINION</u>

**Slomsky, J.**                                                                                             November 23, 2015

**I. INTRODUCTION**

On September 30, 2013, Plaintiff Major L. Mitchell ("Plaintiff") filed a Complaint against Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. No. 3.) In the Complaint, Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final decision denying his claim for Supplemental Security Income under Title XVI of the Social Security Act (the "Act").[1] On December 17, 2014, United States Magistrate Judge Linda K. Caracappa filed a Report and Recommendation recommending that the Court deny Plaintiff's Request for Review. (Doc. No. 15.)

---

[1] 42 U.S.C. §405(g) states that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia."

Before the Court are Plaintiff's Objections to the Report and Recommendation (Doc. No. 16), Defendant's Response to Plaintiff's Objections (Doc. No. 17), and Plaintiff's Reply (Doc. No. 18). Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of the portions of the Report and Recommendation to which objections have been made. After an independent review of the record and for reasons that follow, the Court finds that Plaintiff's Objections lack merit, and adopts and approves in its entirety the Report and Recommendation.

## II. PROCEDURAL HISTORY

On May 2, 2011, Plaintiff filed an application for Supplemental Security Income ("SSI") with the Social Security Administration ("SSA" or "Agency"). (Administrative Record ("Admin. R.") at 85.) Plaintiff alleged a disability beginning on April 1, 2009. (Id.)

On October 31, 2011, Plaintiff's claim was denied. (Doc. No. 15 at 1.) On November 28, 2011, Plaintiff filed a written request for a hearing pursuant to 20 C.F.R. §§ 404.929 and 416.1429. (Admin. R. at 104.) The request was granted and on February 14, 2013, Plaintiff, who was represented by counsel, appeared before William A. Kurlander, Administrative Law Judge (the "ALJ"). (Id. at 18-69.) Plaintiff and Patricia Scott, "an impartial vocational expert," testified at the hearing. (Id.)

On March 28, 2013, the ALJ, pursuant to the sequential evaluation process applicable to a claim of disability,[2] issued a decision denying Plaintiff's claim. (Admin. R. at 82–98.) On June 21, 2013, the Appeals Council granted Plaintiff's request for review. (Id. at 10-13.) On July 31, 2013, the Appeals Council issued a decision affirming the ALJ's findings and conclusion that Plaintiff was not disabled. (Id. at 1–9.)

---

[2] 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See also* Part III, *infra.*

On September 30, 2013, Plaintiff filed a Complaint in this Court against the Commissioner seeking review of the final determination. (Doc. No. 3.) After both parties submitted briefs and documents in accordance with this Court's Procedural Order (Doc. No. 4), the Court referred the matter on April 3, 2014 to United States Magistrate Judge Linda K. Caracappa for a Report and Recommendation. (Doc. No. 14). On December 17, 2014, Magistrate Judge Caracappa filed the Report and Recommendation. (Doc. No. 15.) On December 23, 2014, Plaintiff filed Objections to the Report and Recommendation. (Doc. No. 16.) On December 30, 2014, the Commissioner filed a Response to Plaintiff's Objections. (Doc. No. 17.) On January 4, 2015, Plaintiff filed a Reply. (Doc. No. 18.) As stated previously, the Court must now "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. BACKGROUND

### A. *Plaintiff's History and Characteristics*[3]

Plaintiff Major Lee Mitchell was born on April 12, 1962 and is 53 years of age. (Admin. R. at 28.) He is unmarried, has six children and fourteen grandchildren, and lives in Philadelphia, Pennsylvania. (Id. at 28, 31.)

Plaintiff did not graduate high school and has an eleventh grade education. (Id. at 29.) In the past, he has worked as an automobile mechanic and as a welder. (Id. at 29–31.) At the hearing, he testified that he has not worked since 2006 (Id. at 29), but his work history report states that he worked as a welder from 2004 to 2008 (Id. at 78). He also testified that he

---

[3] Unless otherwise noted, the facts setting forth Plaintiff's history and characteristics are taken from his testimony at the February 14, 2013 hearing.

attempted to resume work as an automobile mechanic in 2012, but worked only a couple of hours because he was physically unable to perform the work. (Id. at 39.)

Plaintiff suffers physical ailments resulting from a 2006 car accident. (Admin. R. at 41-42.) Plaintiff testified that he has become unsociable and dependent on his friends and family. (Id. at 32.) He has not driven or used public transportation since 2008. (Id. at 32, 34-35.) He undergoes pain management treatment and physical therapy for his neck and lower back. (Id. at 44-45.) He also receives pain medication, which causes him to sleep throughout the day. (Id. at 46.) Plaintiff, however, attends doctors' visits and therapy sessions, prepares simple meals, performs minor household tasks, watches television, and spends time with his girlfriend, family and friends. (Id. at 32-49; 89.)

**B.** *Relevant Social Security Administration Review Standards*

A claimant proves he has a "disability" when he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine if a claimant possesses an impairment that prevents him from engaging in any substantial gainful activity, the Agency uses a five-step process:

- (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

- (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

- (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of

>> our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

As part of the last step of the disability inquiry, the Commissioner determines whether there are jobs "in significant numbers in the national economy" that the claimant can perform. 20 C.F.R. § 404.1560. In making this determination, the Commissioner considers information including the claimant's residual functional capacity, testimony of vocational experts, SSA regulations, and the Dictionary of Occupational Titles ("DOT"). Zirnsak v. Colvin, 777 F.3d 607, 616 (3d Cir. 2014). DOT is a "vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." Id. "The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." Id. SVP levels measure the skill necessary to perform a particular job. Id. SVP skill levels range from level 1 to level 9. Id. The DOT skill levels correspond with the three categories of occupations: unskilled, semi-skilled, and skilled. Id. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." Id. Unskilled work corresponds to an SVP level of 1 to 2. Id.

### C. *Testimony of the Vocational Expert*

Vocational Expert ("VE") Patricia Scott testified at the administrative hearing held on February 14, 2013. (Admin. R. at 61–68.) She characterized Plaintiff's past work as semi-skilled, requiring heavy exertion, and not transferrable below the medium physical demand level. (Id. at 63.) The ALJ asked the VE the following hypothetical:

> [A]ssume an individual of claimant's age, education, and work experience...is capable of performing work at the light exertion level with the following additional limitations: The work should be unskilled SVP one or two. And it should be composed of simple, routine tasks. There's no working around hazardous machinery, on ladders or scaffolding, or exposed pipes. There's no more than occasional postural activity. But there's no climbing or crawling. There is no exposure to more than moderate noise intensity level as described in the "Selective Characteristics of Occupations". There is no more than occasional overhead reaching with the bilateral lower extremities. And there's no more than occasional overhead reaching with the bilateral upper extremities...is there other work that the individual could perform? And if so, could you please give me three representative examples?

(Id. at 63-65.) In response, the VE stated that this hypothetical person could perform jobs, including "[a] clothing bagger, [at] light [exertion], SVP1, unskilled," "small parts assembler, [at] light [exertion], SVP2, unskilled," or "mail sorter/clerk [in] private industry, light, SVP2, unskilled." (Id. at 64-65.) The ALJ asked the VE a second hypothetical:

> And now for the second hypothetical, I would like to add a sit/stand option that I'm going to define for you. By this I mean, if the person is sitting and experiences back or other pain, he could stand and stretch in place to alleviate their [sic] pain and continue their work in a sitting position if desired in order to alleviate their pain. Is there still work for the hypothetical individual?

(Id. at 65.) In response, the VE stated that this hypothetical person can perform the clothing bagger position and the mail sorter/clerk position with no erosion of the occupational base. (Id.)

### D. *The Findings to Which Plaintiff Objects*

The ALJ and the Appeals Council found that Mr. Mitchell had severe bilateral sensorineural hearing loss, osteoarthritis, degenerative disc disease, cervical radiculopathy,

6

vertigo, pain disorder, and mood disorder (Admin. R. at 5-6), but that he was not "disabled" within the meaning of the Social Security Act because the claimant could perform the jobs of clothing bagger, mail sorter, and retail trade ticketer. (Id. at 6.) Accordingly, the ALJ and the Appeals Council, on behalf of the Commissioner, denied Plaintiff's SSI claim. (Id.)

In the Report and Recommendation, the Magistrate Judge concluded that the ALJ did not err when analyzing Plaintiff's impairments, but found that the only job available to Plaintiff was as a clothing bagger.[4] (Doc. No. 15.) Thereafter, Plaintiff made two Objections to the Report and Recommendation, which are as follows:

> 1. The Agency's decision is founded on legal error because the Agency failed to weigh the medical opinion evidence in accordance with its own prescribed standards. This objection focuses on the weight the ALJ afforded to the opinions of Plaintiff's treating physician and an Agency appointed independent physician.
>
> 2. The Agency's failure to either accept the medically-established limitations or specify why it rejected those limitations was dispositive legal error.

## IV. LEGAL STANDARD

When a district court reviews a final decision of the Commissioner of Social Security, the court must determine whether the record shows "substantial evidence" to support the

---

[4] The ALJ found that Plaintiff could perform "unskilled SVP 1-2 work composed of simple, routine tasks." (Doc. No. 15 at 24.) The Appeals Council's decision noted Plaintiff could perform unskilled SVP 1 light level work composed of simple, routine tasks, but omitted SVP 2. (Id.) The Magistrate Judge concluded that it is not immediately apparent that the Appeals Council's omission of SVP 2 work from the claimant's residual functional capacity was a typographical error. (Id. at 26.) As the jobs of mail sorter and retail trade ticketer are SVP 2 level jobs, the clothing bagger is the only remaining occupation Plaintiff can perform. (Id.) Nevertheless, the Magistrate Judge held that the clothing bagger occupation satisfies the Agency's burden at the fifth step of the disability evaluation process. (Id. at 27-31.)

Commissioner's decision.[5] 42 U.S.C. §§ 405(g), 1383(c)(3). In making this decision, the court reviews whether there is substantial evidence to support the Commissioner's decision that the plaintiff is not disabled. Substantial evidence is defined as "more than a mere scintilla . . . [and is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (internal citations omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g).

An ALJ, rendering a decision on behalf of the Commissioner, must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975). The ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)). Although the ALJ does not have to make reference to every relevant medical note in a voluminous medical record, the court expects the ALJ, as the fact finder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law. *See* Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Simply referring to "the record" as a whole is insufficient. Abshire v. Bowen, 662 F. Supp. 8, 9 (E.D. Pa. 1986). In reviewing the record, the Court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

---

[5] 42 U.S.C. § 405, which governs the procedure for reviewing Social Security Benefit applications, states that the Commissioner is "directed to make findings of facts, and decisions" as to eligibility for benefits. Pursuant to § 405(b)(1), if an applicant wishes to contest a decision of the Commissioner, the Commissioner must offer the applicant a hearing. An ALJ conducts the hearing, after which a decision is rendered which affirms, modifies, or reverses the decision of the Commissioner. Id. For purposes of this Opinion, the terms "ALJ" and "Commissioner" will be used interchangeably.

**V. DISCUSSION**

  *A. Objection One:  The Agency failed to weigh the medical opinion evidence in accordance with its own prescribed standards.*

  Plaintiff's request for review focuses primarily upon the weight the ALJ attributed to the opinions from Dr. Bruce Williams, Plaintiff's treating physician, and Dr. Alan Bailer, the Agency's examining physician. (Doc. No. 11 at 3-13; Doc. No. 16 at 5-9.) Plaintiff argues that because Dr. Williams was the treating physician, his Medical Source Statement should have been given substantial weight by the ALJ, and that the ALJ impermissibly disregarded the Medical Source Statement. (Id.; Doc. No. 15 at 8, 10.) Plaintiff further contends that because Dr. Bailer's independent opinion is similar to that of Dr. Williams, the veracity of Dr. Williams' assessment is strengthened. (Doc. No. 16 at 7.) The Medical Source Statement is a two-page checkmark assessment reflecting Dr. Williams' opinion about Plaintiff's functional abilities in various categories and reflects his treatment of Plaintiff from April 12, 2009 to January 30, 2013. (Id.; Doc. No. 11 at 8-9; Admin. R. at 550-52.) In the statement, Dr. Williams determined that Plaintiff's functional physical activities were severely limited. (Id. at 333-34.)

  Plaintiff claims that the Magistrate Judge's "assertion that it is error to give controlling weight to a treating opinion if it is inconsistent with other substantial evidence misses the point," because Plaintiff only asks that Dr. Williams' opinion "be weighed in light of the weighing criteria and deference that is required by the Agency's own policy." (Doc. No. 16 at 8.) Plaintiff argues that the Magistrate Judge and Agency failed to apply the "deferential weighing framework required by law and regulations." (Id. at 9.) In particular, Plaintiff claims that the Agency and Magistrate Judge failed to consider the consistency of the treating and examining opinions." (Id.) Plaintiff argues that "the issue in this regard is not whether substantial evidence could support the Agency's decision [. . . but rather] whether the Agency complied with law and

9

regulations by applying the mandatory weighing factors (including the deference due to treating and examining opinions) to reach a decision based on the weight of the evidence." (Id.) Plaintiff's arguments are unpersuasive for the following reasons.

As the Magistrate Judge correctly noted in the Report and Recommendation, a treating source's opinion on the nature and severity of a claimant's impairment will be given controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Moreover, the Third Circuit has recently held:

> [T]he opinion of a treating physician does not bind the ALJ on the issue of functional capacity. See Adorno v. Shalala, 40 F.3d 43, 47–48 (3d Cir.1994) (providing that "a statement by a plaintiff's treating physician supporting an assertion that [plaintiff] is disabled or unable to work is not dispositive of the issue" (internal quotation marks omitted)).

Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). When there is a conflict in the evidence, the ALJ is entitled to decide which evidence to credit, so long as the evidence is not rejected for "no reason or the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). Moreover, "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Id. at 1065. Where "residual functional capacity reports" are "unaccompanied by thorough written reports, their reliability is suspect." Id.; see also Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986); Green v. Schweiker, 749 F.2d 1066, 1071, n.3 (3d Cir. 1984).

The Magistrate Judge reviewed the ALJ's considerations and findings as to the evidence in the record. There is substantial evidence in the record to support the ALJ's findings and reasons for crediting and discrediting medical evidence and opinions as he did. The ALJ adequately evaluated all relevant evidence and explained the basis for his conclusions, including the conflicting evidence, his credibility determinations, and the weight given to the physician opinions.

Although Dr. Williams was Plaintiff's treating physician, he did not conduct his physical therapy or pain management sessions. (See Admin. R. at 431-549.) Instead, Dr. Williams referred Plaintiff to Dr. Gaurav Trehan, a pain management specialist at Temple University. (Id.) Plaintiff met with Dr. Trehan multiple times between June 6, 2010 and October 10, 2012. (Id.) The ALJ examined the evidence in the record and reasonably determined that the severity of the restrictions expressed in Drs. Williams' and Bailer's checklist assessments were inconsistent with the other substantial evidence in the record, specifically progress notes from Dr. Trehan. (Id.) Dr. Trehan opined that Plaintiff benefits from his pain medication; physical examinations have consistently revealed no more than decreased lumbar range of motion due to pain, lumbar tenderness, and an antalgic gait with normal strength and intact reflexes; and Plaintiff does not require an ambulatory device. (Id. at 199, 200, 202-06, 209-10, 348-63.) Additionally, Plaintiff did not provide information regarding his number of visits to Dr. Williams' office, the extent of Dr. Williams' treatment, or any examination findings other than the checklist assessment, whereas the contradictory findings of Dr. Trehan derive from treatment notes and recorded medical examinations (Id.) In view of these inconsistencies, the ALJ's decision to give Drs. Williams' and Bailer's assessments less weight than other assessments in the record is appropriately explained by the ALJ and is supported by substantial evidence.

As the Magistrate Judge concluded, the ALJ adequately set forth both the opinions of each physician and the medical evidence, stated which evidence he gave weight to, made credibility determinations, and explained the considerations which led to his ultimate decision. The ALJ's decision is supported by substantial evidence.

**B.** *Objection Two:  The Agency failed to consider the nature and extent of all of Mr. Mitchell's functional limitations.*

In the second objection, Plaintiff contends that the Agency's failure to adequately specify its reasons for rejecting several exertional and non-exertional limitations outlined in the physicians' checklist assessments is legal error. (Doc. No. 16 at 3-5.) In particular, Plaintiff argues that the Magistrate Judge "failed to identify any factual basis to suggest that the ALJ had reasonably considered Mr. Mitchell's medically-established handling limitations or identified a medical basis for rejecting those limitations." (Id. at 4.)

First and foremost, the role of the reviewing court is to determine whether the determination of the ALJ is supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). An ALJ must "explicitly weigh the evidence, and explain a rejection of any of the evidence." Sykes v. Apfel, 228 F.3d 259, 266, n.9 (3d Cir. 2000) (internal citations omitted). The ALJ must determine the claimant's residual function capacity, which must be supported by medical and other evidence. 20 C.F.R. § 404.1546; Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014).

The ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely

12

credible." (Admin. R. at 91.)   As such, the ALJ found that Plaintiff has the residual functional capacity to perform:

> [L]ight work as defined in 20 CFR 416.967(b) except unskilled SVP 1-2 work composed of simple, routine tasks; no working around hazardous machinery, on ladders or scaffolding, or at exposed heights; no more than occasional postural activities, but no climbing or crawling; no exposure to more than a "moderate" noise intensity level as described in the Selected Characteristics of Operations; no more than occasional pushing/pulling with the bilateral lower extremities; no more than occasional overhead reaching with the bilateral upper extremities; and with a sit/stand option.  By this [the ALJ meant] if the person is sitting and experiences back or other pain, they can stand and stretch in place to alleviate their pain and continue working in the standing position if desired.  Similarly, if the person is standing and experiences back or other pain, they can sit down to continue their work in a sitting position if desired, in order to alleviate their pain.

(Admin. R. at 90.)

As discussed in objection one, the ALJ assigned little weight to the checklist assessments proffered by Drs. Williams and Bailer because they were not supported by the medical records or the ALJ's observations during the hearing.  Despite Plaintiff's contentions, the ALJ went into great detail explaining why he afforded little weight to Drs. Williams' and Bailer's checklist assessments.  His explanation is set forth in full as follows:

> In terms of [Plaintiff's] alleged back and neck pain, a review of the medical evidence supports that [Plaintiff] has a history of cervical and lumbar impairments.  While I recognize that [Plaintiff] experiences some pain and discomfort from these impairments, the medical evidence simply does not corroborate the level and effect of his alleged symptoms.  An April 2012 EMG study of the upper extremities showed an old chronic cervical radiculopathy (Exhibit B12F).  A July 2012 MRI of the [Plaintiff's] cervical spine demonstrated only mild degenerative changes of the cervical spine, while a September 2012 MRI of the lumbar spine revealed no more than mild discogenic disease at L3-4 (Exhibit B13F).  The [Plaintiff] has sought out appropriate treatment for his symptoms and utilized multiple treatment modalities, including narcotic pain medication, muscle relaxers, physical therapy, and epidural steroid injections.  Progress notes from pain management physician, Gaurav Trehan, M.D., have noted that [Plaintiff] receives benefit from his pain medication (Exhibits B2F and B12F).  Physical examinations have consistently revealed no more than decreased lumbar range of motion due to pain, lumbar tenderness, and an antalgic gait with normal strength and intact reflexes (Exhibit B12F).  Further, [Plaintiff] does not require an assistive ambulatory device.  Any limitations [Plaintiff] experiences as

a result of his lumbar and cervical impairments are adequately accommodated by the established residual functional capacity.

Regarding [Plaintiff's] allegations of vertigo, the medical evidence reveals that [Plaintiff] has complained of dizziness brought on by getting up too quickly in the morning, as well as head movements during the day. However, videonystagmography (VNG) testing to determine whether [Plaintiff's] dizziness is caused by inner ear disease could not be completed. A May 2011 brain MRI demonstrated nonspecific mild white matter signal change, but was otherwise unremarkable (Exhibit B3F). During his consultative examination, [Plaintiff] was not observed to have any balance problems while ambulating from the exam table to a chair, but was noted to have some problems on the scale (Exhibit B5F). [Plaintiff's] dizziness has been accommodated in the established residual functional capacity by extensive postural and environmental restrictions.

In terms of [Plaintiff's] alleged hearing deficits, the record supports that [Plaintiff] suffers from hearing loss. Audiograms in August 2010 and September 2011 have revealed bilateral sensioneural hearing loss (Exhibits B3F and B6F). [Plaintiff] has also complained of difficulty understanding speech, reporting that he has to be in a relatively quiet room in close proximity to the speaker. During [Plaintiff's] August 2011 consultative examination, the doctor noted that he had to speak with a much louder voice than normal in order to communicate with [Plaintiff] (Exhibit B4F). In September 2011, [Plaintiff] reported that his hearing loss has become progressively worse, causing considerable difficulty in conversational situations (Exhibit B6F). Despite [Plaintiff's] hearing difficulties, I note that [Plaintiff] evidenced no inability to hear during the hearing and was able to fully participate. Further, [Plaintiff] did not demonstrate any speech impediment that would indicate inability to hear himself when he spoke. In fact, even when [Plaintiff's] attorney would ask questions of [Plaintiff] while looking down, resulting in [Plaintiff] not being able to see his lips, there were no communication difficulties between the two. In addition, [Plaintiff] asserted that he spends time watching television and is apparently able to hear and understand the programming. Therefore, while I find that [Plaintiff] does have a "severe" hearing disorder, it does not impair his ability to hear, comprehend, and speak in particular environments. However, I have included a restriction to no exposure to more than a "moderate" noise level in the established residual functional capacity.

As for [Plaintiff's] mental health, I note that [Plaintiff] has not received any formal mental health treatment from a psychiatrist, therapist, or social worker. Further, during the hearing, the claimant did not testify to any mental health symptoms or limitations affecting his ability to work . . . I find that [Plaintiff's] mental health problems are adequately accommodated by a restriction to unskilled SVP 1 to 2 work composed of simple, routine tasks.

(Admin. R. at 91-92.)

The ALJ's determination that, despite physical and mental limitations, Plaintiff has the residual functional capacity to perform light unskilled work at the SVP 1-2 level is supported by substantial evidence.

Moreover, with regard to the handling limitation, it was only noted in Dr. Williams' checklist assessment, and no medical findings were cited by Dr. Williams to support this limitation. (Admin. R. at 551; Doc. No. 16 at 4.) The ALJ listed Dr. Williams' handling limitation, but found that the severity of the restrictions were not supported by other substantial evidence. (Admin. R. at 93.)

Additionally, Plaintiff asserts that it "strain[s] reasonable belief" to conclude that a clothing bagger could perform his duties with no more than occasional overhead reaching since the DOT work description contains the phrases, "hang garments" and "pull plastic" over them. (Doc. No. 16 at 4-5.) However, Plaintiff failed to include the entire DOT description, which states:

> Covers garments or household articles with plastic or paper bags by any of [sic] following methods: (1) Hangs garment or article on stand and covers with plastic bag. (2) Pulls plastic from rolls, sliding plastic material over article and tearing plastic at perforations to form bag of desired size. (3) Hangs garment on holder in machine and pulls plastic from roll to envelop garment. Pushes button or moves lever to close heating irons that cut and seal plastic to form bag of desired dimensions. Hangs bagged article on slide rail or rack. (4) Drops shirts or folded articles into machine that automatically envelops articles in plastic bags and drops articles into box. Removes boxes from beneath machine when filled and replaces boxes.

DOT, 920.687-018, 1991 WL 687965 (1991) (describing the job of garment bagger). Given the above description, Plaintiff's assumption that there would be no way to pull the plastic bags over the garments without reaching overhead lacks merit.[6] Taking into account Plaintiff's established

---

[6] The DOT industry description of a clothing bagger does not specify that the garment must be bagged while placed on a rack high enough to require more than occasional overhead

15

limitations, along with the VE's testimony, substantial evidence exists for the finding that Plaintiff was capable of performing work as a clothing bagger.[7] As such, the second claim of the request for review will be denied.

## V. Conclusion

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation of Magistrate Judge Linda K. Caracappa. (Doc. No. 15.)

An appropriate Order follows.

---

reaching. Furthermore, the final two methods suggest that the bagging process is done by machine.

[7] Although the clothing bagger was the only SVP 1 job Plaintiff was capable of performing, the VE testified that there exists 200,000 clothing bagger jobs nationally and 970 in the Philadelphia area with no erosion of the occupational base after including a sit/stand option. (Admin. R. at 65.) The Third Circuit has consistently held that a person is not disabled if he or she can perform work that exists in significant numbers in the national economy. Ahmad v. Commissioner of Soc. Sec., 531 Fed. App'x 275, 278 (3d Cir. 2013) (concluding 569 jobs was "evidence of other work in significant numbers in the national economy"); Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding "200 jobs" in regional economy "a clear indication that there exists in the national economy other substantial gainful work").